IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Crim. No. 22-278 (PAD) |
| WILLIAM CLAUDIO SUAREZ | |

**MEMORANDUM AND ORDER**

On February 24, 2025, the U.S. Probation Office filed a motion notifying the Court of Defendant's violations of conditions of supervised release. Docket No. 48. Among other matters, the USPO alleged that Defendant was arrested on February 20, 2025, for purported violations to the Puerto Rico Domestic Abuse Prevention and Intervention Act, Law No. 54 of August 15, 1989, as amended, 8 P.R. Laws Ann. §§ 601 et seq. ("Law 54"), and that, although no charges were filed at that time, a protective order was issued forbidding Defendant from approaching, or coming near the residence of, Joanna Nieves-Morales, Defendant's consensual partner. Id. It is further alleged that, on February 21, 2025, Nieves-Morales reported that Defendant was in the parking lot near her home, which led to Defendant's arrest and the filing of charges for violation of the protective order. The USPO alleged that Defendant violated: Mandatory Condition No. 1: "You must not commit another federal, state or local crime." Id.[1]

The preliminary revocation hearing was held on three dates: June 17, June 23 and July 2, 2025. Docket Nos. 63, 66, 68. The Government called U.S. Probation Officer Alexander Galindo, Puerto Rico Police Bureau ("PRPB") officer José Rosado Correa, and Joanna Nieves-Morales. The Defendant introduced Defendant Exhibit A. Arguments were heard. The parties submitted post hearing briefs at Docket Nos. 70-71.

---

[1] The motion at Docket No. 48 charged Defendant with violations of other conditions of supervised release. Defendant opted not to contest most of those allegations (i.e., those pertaining to Mandatory Condition No. 2, Mandatory Condition No. 3, Special Condition No. 2, and Special Condition No. 1) and, as such, I made a finding of probable cause as to those. See Docket No. 63. The motion at Docket No. 48 also charged Defendant with violation of Standard Condition No. 4: "You must answer truthfully the questions asked by your probation officer." Defendant contested that allegation and, after conclusion of the evidentiary hearing, I found no probable cause for that violation. See Docket No. 68.

1

**I.     Preliminary Hearing Standard**

Pursuant to Rule 32.1(b)(1) of the Federal Rules of Criminal Procedure, "[i]f a person is in custody for violating a condition of probation or supervised release, a magistrate judge must promptly conduct a hearing to determine whether there is probable cause to believe that a violation occurred." Fed.R.Crim.P. 32.1(b)(1)(A). The concept of probable cause is a narrow one. "[P]robable cause may be found where there is a 'fair probability,' based on the totality of the circumstances, that a defendant committed the offense charged." United States v. Balestier-Sanches, 2014 WL 993551 * 1 (D.R.I. Mar. 13, 2014) (citing United States v. Mims, 812 F.2d 1068, 1072 (8th Cir.1987)). See also United States v. Gómez, 716 F.3d 1, 9 (1st Cir. 2013)). Except for the rules on privilege, the Federal Rules of Evidence are not applicable at preliminary hearings or in revocation proceedings. Fed.R.Evid. 1101(d)(3).

**II.     Discussion**

USPO Galindo testified that he received information from the PRPB that Defendant had been involved in a domestic dispute on February 20, 2025. He interviewed Nieves-Morales, who informed him that in the early morning hours of February 20, she asked Defendant to move out of her residence and come to the house to pick up his belongings. That Defendant showed up at the door and pushed it open, forcing himself into her residence, and while in the residence grabbed her by the neck with one hand and by the hair with the other. That this was done in the presence of her minor children and that Defendant left the residence shortly after the incident. USPO Galindo further testified that Nieves-Morales went to the hospital for reported neck pain. And that Nieves-Morales did not want to pursue criminal charges but that she obtained a protective order against Defendant. He also testified that Defendant reportedly violated the protective order as Nieves-Morales saw him parked in his mother's car near her residence.

The testimony of PRPB officer Rosado-Correa was largely consistent with that of USPO Galindo. He was on duty in the morning hours of February 20. He interviewed Nieves-Morales, who provided a similar account of the chain of events. According to his interview of Nieves-Morales, her minor daughter was the one who saw the incident. Rosado-Correa testified that Nieves-Morales had marks on her neck that day. Rosado-Correa testified that he also interviewed the Defendant. According to the Defendant, he grabbed Nieves-Morales by the arms before leaving her residence.

Nieves-Morales testified that she had been in a consensual relationship with the Defendant for approximately eight months prior to the incident. On the day of the incident, she told Defendant by phone to collect his belongings and leave her residence. He arrived at her residence. Opened the door

and pushed her. While in one of the rooms of the residence, Defendant started shaking her and attempted to throw her on the bed. She then went to the laundry area and so did he. He asked for his car keys, but Nieves-Morales refused to give him the keys. Defendant then grabbed her by the neck, initially with his two hands, and later with one hand, while using the other hand to grab her by the hair. Nieves-Morales testified that she felt out of breath and afraid. It was then that her minor daughter came out and saw the incident. At that point, Defendant released Nieves-Morales and left the residence. It was Defendant who called the PRPB to report the incident. Nieves-Morales testified that she went to the hospital because she had neck and back pain. She also testified that she did not want to pursue charges, but that Defendant violated the protective order when he was parked near her residence. Nieves-Morales reported to the PRPB that Defendant had violated the protective order.

Article 2.8 of Law 54 makes it a felony to violate any protective order issued under the act. 8 P.R. Laws § 628. Article 3.2 of Law 54 provides that a person who uses physical force against a consensual partner (a) in her residence or (d) in front of minor children will have committed a felony constituting aggravated abuse. Id. at § 632. Article 3.2a of Law 54 independently punishes aggravated abuse by strangulation, suffocation, or asphyxiation, regardless of whether the conduct results in a visible or prolonged injury. Id. at § 632a.

Despite the allegations in the motion at Docket No. 48 and the testimony of two witnesses that Defendant violated the terms of the protective order, the Government did not introduce into evidence the protective order or any other evidence from which I can ascertain the scope and limitations of the order. And although I can obviously infer that such a protective order would prohibit Defendant from coming near Nieves-Morales, without evidence of the restrictions established in that order, I cannot conclude that Defendant may have violated the protective order by sitting in his mother's car in the parking lot near Nieves-Morales' residence. The Government did not present sufficient evidence to establish probable cause as to a violation of Article 2.8 of Law 54.

But there is sufficient evidence to find probable cause for violations of Articles 3.2 and 3.2a of Law 54. The three witnesses were consistent in that, pursuant to the account of Nieves-Morales, Defendant grabbed her by the neck while in her residence and in front of her minor daughter. PRPB officer Rosado-Correa reported having seen marks on the neck of Nieves-Morales and Nieves-Morales went to the hospital to receive treatment for neck and back pain. Even though Nieves-Morales admitted not to have used the word "asphyxiation" when she reported the incident to PRPB, she testified that Defendant grabbed her by the neck with force and that she had trouble breathing. Article 3.2a does not require that manual strangulation result in visible or prolonged injury. And while

the domestic violence report at Defendant Exhibit A contains a different description of the incident, Defendant did not present the testimony of the person who prepared that document to establish why that account differs from the one relayed by Nieves-Morales to USPO Galindo and Rosado-Correa. Further, that document does state that Nieves-Morales reported a neck injury, which is consistent with Nieves-Morales' version in Court. Based on the totality of the circumstances and the evidence presented, there is a fair probability that Defendant violated Articles 3.2 and 3.2a of Law 54.

### III. Conclusion

I find probable cause that Defendant violated Mandatory Condition No. 1 of his conditions of supervised release.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 14th of July, 2025.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge
